Judge Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> SANDRA THORPE, <br><br> Defendant. | NO. CR-09-0084-MJP <br><br> GOVERNMENT'S SENTENCING MEMORANDUM RE: Sandra Thorpe <br><br> [Hearing Date: December 4, 2009] |

## I.  INTRODUCTION

Defendant Sandra Thorpe comes before the Court having pled guilty to conspiring to commit bank fraud, mail fraud, and wire fraud in violation of Title 18, United States Code, Section 371.  Defendant Thorpe's five co-conspirators, Vladislav Baydovskiy, Viktor Kobzar, Alla Sobol, David Sobol and Camie Byron all entered guilty pleas to the same charge.  A seventh defendant, Donata Baydovskiy, entered a guilty plea to making a false statement in a matter occurring before the Department of Housing and Urban Development. The false statement was made during the course of the charged conspiracy.

The charged conspiracy arose from a scheme to defraud lending institutions into making mortgage secured purchase money and refinance loans.  An additional aspect of the scheme included defrauding otherwise unqualified prospective borrowers to secure purchase money loans based on false and fraudulent representations.  Ms. Thorpe's co-conspirators profited from the scheme by charging excessive fees and diverting some of the fraudulently

Government's Sentencing Memorandum
Thorpe, Sandra
Baydovskiy et al., CR-09-0084-MJP) - 1

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1 obtained loan proceeds to themselves. Defendant Sandra Thorpe's role in the charged
2 scheme was limited. She operated a small accounting and bookkeeping service from her
3 home. In exchange for a minimal fee, she prepared false asset and income verification letters
4 on behalf of prospective borrowers. The fraudulent letters were packaged with other false
5 documentation and submitted to lenders in an effort to obtain residential real estate loans.

## II.  FACTUAL BACKGROUND

The facts and circumstances underlying the offense conduct for which Ms. Thorpe pled guilty are summarized in her Plea Agreement at pages six and seven . The agreed statement in the Plea Agreement is repeated below for the courts convenience.

The Defendant owned and operated a sole proprietorship known as SMT Enterprises. The business provided accounting services to businesses and individuals. Beginning in early 2006 and continuing to February 2008, the Defendant prepared letters falsely representing that she had performed accounting services for several individuals. Representations made in the letters included false statements attesting to the individuals employment status, the preparation of tax returns, business ownership, and estimations as to monthly earnings. The letters were drafted on stationary falsely identifying the Defendant as an accountant working on behalf of SMT ENTERPRISES. The use of the business identifier and the Defendant's occupation as an accountant was intended to legitimize the representations.

In fact, the Defendant had no business relationship with the persons or businesses identified in the verification letters. She never met the individuals for whom she had drafted the letters. The information contained in the fraudulent letters was supplied by co-conspirator Camie Byron. The Defendant knew that Camie Byron was an employee of Kobay Financial Corporation (Kobay) and Nationwide Home Lending, LLC (Nationwide). The Defendant also knew that both Kobay and Nationwide were engaged in the business of brokering real estate loans. In addition, the Defendant knew that the fraudulent letters she prepared at the request of Camie Byron were intended to be submitted to lending institutions by Kobay and Nationwide to substantiate a potential borrower's credit worthiness.

Government's Sentencing Memorandum
Thorpe, Sandra
Baydovskiy et al., CR-09-0084-MJP) - 2

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Between September 2006 and February 2008, the Defendant prepared approximately twenty-nine (29) fraudulent verification letters at the request of co-conspirator Camie Byron. She did not retain copies of additional letters prepared in the several months preceding September 2006. The Defendant was paid between twenty (20) and twenty-five (25) dollars for each letter. She did not receive any other consideration, nor did she share in the fraudulently obtained loan proceeds.

The government's subsequent analysis of accounting records maintained by Kobay and Nationwide disclosed that the two entities paid Ms. Thorpe $1,190 over the period of the charged conspiracy. Given the per letter fee charged by Ms. Thorpe, the new information suggests she may have prepared between forty-seven (47) and fifty-nine (59) letters.

### III.   ADVISORY GUIDELINE CALCULATION

The parties' plea agreement does not include an agreed advisory guideline calculation. Based on the offense characteristics, the government contends the following calculation is accurate:

a.  A base offense level of six (6), pursuant to USSG § 2B1.1.(a)(2)  ........  6

b.  No increase pursuant to USSG § 2B1.1.(b)(1)(A) because the reasonably foreseeable pecuniary harm that the defendant knew, or should have known, was a potential result of the offense was $5,000 or less  ..................................................................................  0

c.  A two (2) level increase pursuant to USSG § 2B1.1.(b)(2)(A) because the offense involved 10 or more victims......................................................  2

d.  A two (2) level increase pursuant to USSG § 2B1.1 (b)(9) because the offense otherwise involved sophisticated means...............................  2

e.  Acceptance of Responsibility ...................................................................  [2]

TOTAL ADJUSTED OFFENSE LEVEL  ............................................  8

This proposed calculation differs from that offered by the Probation Office. According to the Probation Office, Ms. Thorpe should be held accountable for the full loss attributable to the scheme to defraud. For the reasons stated below, the government disagrees with this interpretation. The resulting advisory guideline range, based on the government's

Government's Sentencing Memorandum
Thorpe, Sandra
Baydovskiy et al., CR-09-0084-MJP) - 3

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

recommended total adjusted offense level of 8 would be 0 to 6 months applying a criminal history category of I.

### A. Defendant Thorpe Did Not Know, And Under The Circumstances Had No Reason To Know, The Full Extent Of The Pecuniary Harm Caused By The Scheme To Defraud

U.S.S.G. § 2B1.1(b)(1) provides for an increase in the base offense level based on the amount of the loss. Application Note 3(A) defines loss as "the greater of actual loss or intended loss that resulted from the offense." "'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense." Application Note 3(A)(I). Application Note 3(A)(iv) defines "reasonably foreseeable pecuniary harm" as "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense."

Ms. Thorpe contends that while she knew her fraudulent letters were being used by her co-conspirators to obtain real estate loans, she lacked sufficient knowledge of the amount of pecuniary harm being inflicted by the scheme. The government agrees with her contention. Ms. Thorpe prepared the fraudulent letters primarily at the request of co-defendant Byron. She was typically given nothing more than a name, an employer, and a number to include in the verification letter. She was not given any additional information. She had no knowledge of whether the prospective borrower had sufficient assets to otherwise qualify for the requested loan. She had no knowledge of whether her co-conspirators were diverting a portion of the loan proceeds for their personal use. Finally, she had no knowledge of whether the prospective borrowers ultimately obtained the requested loans and met their payment obligations.

Ms. Thorpe was not co-located with the other participants in the scheme. Her link to the others consisted of email communications with Ms. Byron in which Ms. Byron would request the fraudulent verification letter. Her compensation was limited to a $20 to $25 per letter fee. Given this minimal compensation, it is unreasonable to assume that she knew, or had reason to know, of the pecuniary harm inflicted by the broader scheme.

Government's Sentencing Memorandum
Thorpe, Sandra
Baydovskiy et al., CR-09-0084-MJP) - 4

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**B. The Scheme To Defraud Was Devised And Implemented Using Sophisticated Means**

The government disagrees with the Probation Office's decision not to apply the two level enhancement authorized by U.S.S.G. §2B1.1(b)(9) for offenses otherwise involving sophisticated means. Application Note 8(C) to Section 2B1.1 states that "'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense."

Numerous courts have affirmed the district court's application of this enhancement in the context of similar mortgage fraud schemes. *United States v. Septon*, 557 F.3d 934, 935-36, 937 (8th Cir. 2009) (defendant directed his employees to submit fraudulent documents to lenders concealing the fact that defendant was providing bridge loans to buyers for their down payments; that defendant used his businesses to act as sham employers for borrowers in order to falsely verify and the nature and sources of income; that loan applications falsely inflated borrowers' assets and income; and contained false tax returns, pay stubs, gift letters, bank statements, and bank notes); *United States v. Dinnall*, 2009 WL 405365 (11th Cir. 2009) (unpublished) (defendant created and submitted to lenders fraudulent employment and earnings statements in eleven loan applications for borrowers, including fraudulent forms to verify employment, W-2 statements, payroll stubs, bank account statements, and other information, and who listed the phone numbers of friends and relatives on the employment records and recruited those individuals to verify the false information); *United States v. Wright*, 496 F.3d 371, 377-78 (5th Cir. 2007) (defendant used his own funds to purchase cashier's checks for closing costs in the names of the loan applicants, made copies of the same checks which were forwarded to the lenders, then deposited the same cashier's checks into his account); *United States v. Small*, 210 Fed. Appx. 776 (10th Cir. 2006) (unpublished) (defendant employed shell corporations, false financial statements and fictitious persons); *United States v. Edelmann*, 458 F.3d 791, 815-16 (8th Cir. 2006) (defendant created numerous false documents, including multiple years of tax returns, supporting documents, such as W-2 and 1099 forms, bank statements, articles of

Government's Sentencing Memorandum
Thorpe, Sandra
Baydovskiy et al., CR-09-0084-MJP) - 5

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

incorporation, profit and loss statements, and bank letters); *United States v. Amico*, 416 F.3d 163, 169 (2nd Cir. 2005) (defendant used false bank documents; the solicitation and creation of false appraisals; the creation of false blueprints; submission of false blueprints to town officials in order to inflate the assessment of home values; collusion with the attorney representing many of the purchasers at closing); *United States v. Moncrief*, 133 Fed. Appx. 924 (5th Cir. 2004)(unpublished), certiorari granted, judgment vacated by *Moncrief v. United States*, 544 U.S. 1029 (2005) (sophisticated means was employed in mortgage fraud scheme).

As outlined above in the excerpted agreed factual statement, Defendant Thorpe and her co-defendants employed many, if not most, of the means relied upon by courts in the above cited decisions to support application of the sophisticated means enhancement. Ms. Thorpe herself created false verification letters. Those false documents were then used by her co-defendants to secure loans. The fraudulently obtained loans were closed at an escrow company operated by other participants in the scheme. Operation of the escrow company facilitated control over the closing process, preventing lenders from discovering the fraud. This concealment was essential to the success of the scheme. It permitted the fraud to continue unabated for over two years.

**C.    The Scheme To Defraud Involved Ten (10) Or More Victims**

Both the government and the Probation Office contend the two (2) level enhancement authorized by USSG §2B1.1.(b)(2)(A) is applicable because the charged and agreed scheme involved ten (10) or more victims. As noted in the Declaration of James C. Vach, filed contemporaneously with this memorandum, the government identified twelve lenders who extended loans on the basis of false and fraudulent information submitted by those participating in the scheme. Vach Declaration at ¶ 3. Information recently developed to assist the court in establishing a reasonable estimate of the losses attributable to the fraud scheme identified ten (10) lenders or servicing companies reporting losses from loans extended on the basis of false and fraudulent information. Vach Declaration at ¶ 5.

//
//

Government's Sentencing Memorandum
Thorpe, Sandra
Baydovskiy et al., CR-09-0084-MJP - 6

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

## IV.   RECOMMENDATION & JUSTIFICATION

### A.   Criminal Fine, Restitution, Supervised Release

The government believes that Ms. Thorpe lacks the necessary resources to pay both a criminal fine and the mandatory restitution obligation to be sought by the government. Consequently, the government will not oppose a request that the fine be waived.

The charged conduct to which Ms. Thorpe pled guilty involved offenses "committed by fraud or deceit," imposing a mandatory restitution obligation. 18 U.S.C. § 3663A(c)(1)(A)(ii). Section 3663A(d) of the Mandatory Victim Restitution Act provides that "[a]n order of restitution under [the Act] shall be issued and enforced in accordance with section 3664. 18 U.S.C. § 3663A(d). Given Ms. Thorpe's limited role in the scheme, the government agreed at Section 9 of the parties' Agreement to "recommend a restitution amount that reflects an appropriate apportionment of liability among all of the charged defendants and fairly accounts for the Defendant's contribution to the fraudulent scheme and her economic circumstances, consistent with Title 18, United States Code, Section 3664(h)." The government recommends that an appropriate apportionment of liability under these circumstances would limit Ms. Thorpe's restitution obligation to the $1,190 she was compensated for preparing the fraudulent verification letters. This proposal fairly accounts for her limited contribution to the fraudulent scheme.

### B.   Term of Imprisonment/Probation

In consideration of the factors set forth in 18 U.S.C. § 3553(a), the government concurs with the Probation Office's recommendation that Ms. Thorpe serve a three (3) year term of probation to include the requirement that she complete one hundred and twenty (120) hours of community service within the first two years of the probationary term.

#### 1.   The Nature and Circumstances of the Offense

No one disputes the limited role played by Ms. Thorpe in the scheme to defraud lenders. That limited role, however, was an important piece of a concerted effort to deceive lenders by falsely representing the creditworthiness of prospective borrowers. It was a role too often filled by professionals such as Ms. Thorpe who were willing to effectively sell their credibility in

Government's Sentencing Memorandum
Thorpe, Sandra
Baydovskiy et al., CR-09-0084-MJP - 7

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

furtherance of the scheme. The relative success of the charged scheme in this case, and similar mortgage fraud cases being investigated and prosecuted nationwide, requires the collaborative efforts of mortgage brokers, loan officers, accountants, and escrow closers.

### 2. History and Characteristics of the Defendant

Ms. Thorpe has no known history of committing or assisting others in committing fraud. She apparently perceived little risk in providing fraudulent verification letters. Ms. Thorpe did cooperate with investigators when asked to describe her participation in the scheme. She readily conceded her role and provided copies of some of the fraudulent letters.

### 3. Reflect Seriousness of Offense, Promote Respect for the Law, and Provide Just Punishment

Ms. Thorpe was a minor participant in a much larger scheme to defraud lenders into extending millions in real estate loans. As noted above, she effectively "sold" her credibility and that of her business by providing fraudulent verification letters. The recommended probationary sentence and community service requirement are appropriate sanctions given this minor, yet important, contribution to scheme

### 4. Afford Adequate Deterrence to Criminal Conduct

The government has every reason to believe that this prosecution, together with the recommended probationary sentence, will deter Ms. Thorpe from engaging in further criminal conduct. An equally important consideration, however, is the deterrent effect this prosecution and the resulting sentences for all of the defendants will have on the broader real estate and mortgage lending industries. As discussed above, countless others employed in the mortgage lending industry profited from using many of the same fraudulent practices prosecuted in this case.[1] Ms. Thorpe's profits were an order of magnitude below those enjoyed by her co-

---

[1] The Mortgage Asset Research Institute's March 2009 report to the Mortgage Bankers Association reports that "fraud incidence is at an all-time high," and "[e]merging fraud trends are further draining lender, law enforcement, and consumer resources in the industry's most challenging times." http://www.marisolutions.com/resources-news/press-release-20090316.asp There were 63,713 mortgage fraud related suspicious activity reports filed with FinCEN in fiscal year 2008, compared to 17,127 such reports in fiscal year 2004 --an increase of 370%.

Government's Sentencing Memorandum
Thorpe, Sandra
Baydovskiy et al., CR-09-0084-MJP) - 8

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

defendants but they were no less illegal. Professionals such as Ms. Thorpe need to be reminded that abandoning honesty and ethical dealings will not be rewarded.

### 5. Avoid Unwarranted Sentence Disparity Among Defendants

The recommended probationary sentence for Ms. Thorpe fully recognizes her relatively minor role in the charged scheme. The government has, and will be, recommending significant terms of imprisonment for her co-conspirators. Ms. Thorpe is the only defendant who did not share in the proceeds of the fraud. Imposing any term of imprisonment would result in an unwarranted disparity between Ms. Thorpe and her more culpable co-conspirators.

### V. CONCLUSION

For the reasons stated above, the government concurs with the sentencing recommendation made by the Probation Office.

DATED this 30th day of November, 2009

Respectfully submitted,

JENNY A. DURKAN
United States Attorney

/s/ James D. Oesterle
JAMES D. OESTERLE
WSBA # 16399
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Ste. 5220
Seattle, WA 98101
Facsimile: 206-553-2502
Phone: 206-553-5040
E-mail: jim.oesterle@usdoj.gov

Government's Sentencing Memorandum
Thorpe, Sandra
Baydovskiy et al., CR-09-0084-MJP - 9

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 30, 2009 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendants.

*/s/ Kimberly King*
KIMBERLY KING
Legal Assistant
United States Attorney's Office
700 Stewart Street, Ste. 5220
Seattle, Washington 98101
Phone: (206) 553-5127
Fax:    (206) 553-2502
E-mail: Kimberly.King3@usdoj.gov

Government's Sentencing Memorandum
Thorpe, Sandra
Baydovskiy et al., CR-09-0084-MJP) - 10

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970